No. 40,961

EVELYN DOMANN, *Appellee,* v. CHARLES PENCE and WILLIAM MOON, *Appellants.*

(325 P. 2d 321)

Opinion filed May 10, 1958.

J. W. *Lowry*, of Atchison, argued the cause, and *James F. Swoyer, Sr.*, and *James F. Swoyer, Jr.*, both of Oskaloosa, *Gordon K. Lowry*, of Valley Falls, *Steadman Ball*, *William E. Stillings* and *Robert D. Caplinger*, all of Atchison, were with him on the briefs for the appellants.

*Harold E. Doherty*, of Topeka, argued the cause, and *William C. Leech*, of Oskaloosa, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover for personal injuries sustained in a collision of two automobiles at a blind rural intersection. Judgment was for plaintiff, and defendants have appealed.

There is really very little, if any, dispute as to the facts. Briefly summarized, they are as follow:

At about 9:30 on the morning of July 29, 1954, plaintiff, who lived with her husband and children on a farm northwest of Winchester, in Jefferson County, started out for Atchison in her husband's automobile. The children were with her. The day was bright and clear and the gravel road was dry.

At about this time defendant Pence, a farmer living not far from plaintiff's home, was having trouble with his plow and decided to go in to Winchester for repairs or something. He borrowed the automobile owned by his father-in-law, defendant Moon, and started out.

Unfortunately, their routes of travel, the distances involved, their respective speeds, and the element of time, coincided to bring their cars together in the intersection in question.

Both plaintiff and defendant Pence lived near the intersection, and both were familiar with it. Plaintiff approached it from the west on a gravelled township road. She had been driving about 30 miles per hour, but as she neared the intersection she slowed to 15 miles per hour. She looked to the south and saw nothing.

When about 10 feet from the west edge of the intersection she could see 50 or 60 feet north, but saw nothing. As she entered the intersection she continued to look north and saw Pence's car approaching from the north about 100 to 125 feet distant. She continued to go on through. At the time in question Pence was travelling about 35 miles per hour and first saw plaintiff's car when he was 60 or 70 feet north of the intersection. He applied his brakes and skidded on the gravel road until his car hit the left rear of plaintiff's car. When they came to rest plaintiff's car was on the south side of the east-west road facing west, and Pence's car was on the east side of the north-south road facing north. Plaintiff was thrown from her car and suffered severe back injuries, and was taken to the hospital at Leavenworth.

Plaintiff filed this action seeking damages in the amount of $40,000 to compensate her for her medical and hospital bills, pain and suffering, and permanent injuries. Her petition contained the usual allegations of negligence on the part of defendant Pence, such as driving at a high and dangerous rate of speed, failure to yield the right of way, failure to reduce his speed after he saw, or should have seen, plaintiff's car, and so forth.

With respect to defendant Moon, the owner of the car being driven by Pence, it was alleged that at the time in question Pence was acting as the agent, servant and employee of Moon, and was acting in furtherance of his, Moon's, business.

The separate answer of defendant Pence denied negligence on his part, and alleged the usual grounds of contributory negligence on the part of plaintiff.

The separate answer of defendant Moon denied that at the time and place in question Pence was acting as his agent, servant and employee, and charged plaintiff with the usual acts of contributory negligence. In his cross-petition defendant Moon alleged that as a direct result of the acts of negligence on the part of plaintiff his automobile was damaged in the sum of $575, and he sought recovery of that amount.

Upon the issues thus framed the parties proceeded to trial before a jury. During the course thereof plaintiff dismissed as to defendant Moon and the court sustained plaintiff's demurrer to Moon's evidence in support of his cross-petition.

The jury returned a general verdict for plaintiff against defendant Pence in the amount of $29,458, and answered special questions as follow:

"1. What do you find the speed of the plaintiff Evelyn Domann to be at the time she entered the intersection? 15.

"2. Do you find that this was a blind intersection? Yes.

"3. Do you find the defendant Pence guilty of negligence? Yes.

"4. If your answer to No. 3 is 'yes,' state such act or acts? The defendant, Charles Pence, was driving at excessive speed, due to existing conditions, to maintain proper control of his car. The above defendant also failed to yield right of way.

"5. Do you find the plaintiff guilty of contributory negligence? No.

"6. If your answer to No. 5 is 'yes,' state what it was. . . .

"7. Who do you find entered the intersection first? The plaintiff, Evelyn Domann.

"8. Did plaintiff see defendant Pence prior to the accident? Yes.

"9. If your answer to No. 8 is 'yes,' state position, in relation to the intersection, of plaintiff's car when she first saw defendant Pence? The plaintiff's car was entering the intersection when she saw the defendant's car."

All post-trial motions, including a motion for a new trial, were overruled, and judgment was entered on the verdict. Both defendants have appealed, and thirteen specifications of error are urged.

At this point we pause for a moment to mention a matter which has nothing whatever to do with the decision in this case, but which does have a bearing on the preparation of the opinion. We have reference to the perennial problem of "brevity in judicial opinions," a problem common to all appellate courts. Our statutes (G. S. 1949, 20-112, 60-3328, 20-111 and 60-3329) merely provide that the opinion of this court in a given case shall be reduced to writing and that the syllabus thereof shall contain a brief statement in writing of the points decided in the case. Inquiries often are made by lawyers as to the reason for such long opinions in cases of this type involving negligence, proximate cause, rules of the road, and so forth, in which the rules of law are so well established, and particularly when the appeal results in an affirmance of the judgment. We realize that an opinion in the nature of "record examined and no error found" is unfair to an appellant who earnestly believes he has a meritorious appeal, but at the same time we also realize fully that many opinions could be greatly reduced in length without impairing their value, and that many contribute very little, if anything, to the body of the law, especially in those instances in which the legal principles are well settled. All will agree, we believe, that the instant case is of the type which falls within that category.

Keeping the thoughts just expressed in mind, we will attempt to dispose of this case on that basis—and at the same time not "sacrifice clarity for brevity," but in doing so, assure defendant appellants that each of their contentions has been given careful consideration.

It is argued that defendant Pence's demurrer to plaintiff's evidence should have been sustained on the ground it showed plaintiff to be guilty of contributory negligence as a matter of law, thus barring her recovery. We will not repeat the evidence. This contention, under well-established rules, is without merit.

It is argued the court erred in the admission of evidence. We have examined the evidence, and this contention likewise is without merit. Of a certainty, no prejudicial testimony was admitted, and neither does it appear the court erred in the exclusion of evidence.

With respect to defendant Moon, the court did not err. Plaintiff dismissed as to him, which she had a right to do, and his right to recover on his cross-petition for damage to his car fell with his failure to establish actionable negligence on her part.

It is contended the court erred in refusing to submit certain special questions. Substantially, those requested were submitted, and they covered the issues to be decided between plaintiff and defendant Pence.

Next, it is contended the court erred in refusing certain requested instructions, and in giving some that it did. This argument apparently revolves around the proposition that this case is controlled by *Green v. Higbee,* 176 Kan. 596, 272 P. 2d 1084 (reaffirmed in *McPherson v. Leichhardt,* 181 Kan. 330, 310 P. 2d 941). The trial court was of the opinion this was not a *"Green v. Higbee* case," in which it was held that a demurrer was properly sustained to the plaintiff's evidence which showed that plaintiff had entered a blind rural intersection at a speed of approximately 40 or 45 miles per hour. We agree. An examination of the instructions given establishes that the jury was fully and properly instructed on all material questions presented by the evidence.

It is argued the court erred in refusing to set aside the answers to special questions 3, 4 and 5, because they are unsupported by and are contrary to the evidence. We find no merit in this contention.

Next, it is contended the court should have entered judgment for

defendant Pence on the special findings. This likewise is without merit. The answers were consistent with each other and also with the general verdict.

And, finally, the remaining specifications of error are that the court erred in denying the motion for a new trial, in entering judgment on the verdict, and in denying Pence's motion for reconsideration of the ruling on the motion for a new trial.

With respect to these last-mentioned rulings a number of contentions are made, but in the main they are based upon alleged misconduct of the jury in arriving at the verdict, and the claim that the verdict is excessive.

We will discuss both of these matters briefly.

After having tried the issues between the litigants, defendant Pence, at the hearing on the motion for a new trial, attempted to "try the jury." In this connection he offered the affidavits and testimony of several of the jurors to the effect that the possibility or probability of his being covered by liability insurance was discussed in the jury room. None went so far as to say the discussion in any way influenced the verdict or the amount thereof. It is conceded that the subject of "insurance" was not mentioned by anyone during the course of the trial. The trial judge ruled there was no affirmative showing that the substantial rights of defendant had been in any way prejudiced by such alleged misconduct. We are compelled to agree. On the general subject see *Williams v. City of Parsons,* 87 Kan. 649, 652, 125 Pac. 60; *Anderson v. Thompson,* 137 Kan. 754, 758, 22 P. 2d 438; *Newell v. City Ice Co.,* 140 Kan. 110, 113, 34 P. 2d 558; *Bohannon v. Peoples Taxicab Co.,* 145 Kan. 86, 88, 64 P. 2d 1; *Pulkrabek v. Lampe,* 179 Kan. 204, 293 P. 2d 998, 54 A. L. R. 2d 732, and *Randle v. Kansas Turnpike Authority,* 181 Kan. 416, 419, 420, 312 P. 2d 235. The facts before us are readily distinguishable from those in *Bryant v. Marshall,* 135 Kan. 348, 10 P. 2d 868, relied on by defendant.

With respect to the contention the verdict in the amount of $29,458 is excessive, we do not propose to detail the evidence as to plaintiff's injuries. It is sufficient to say that she was thirty-four years of age. She sustained severe, painful and permanent injuries, particularly to her back. She spent many days in the hospital and approximately $3,300 for medical care. A part of her lower backbone was removed and four lower vertebrae of her spine did not properly fuse. The testimony of expert orthopedists was to the

effect her permanent disability is from twenty-five to thirty-five per cent, and that her condition will grow progressively worse with age.

As was said and held in *Knoche v. Meyer Sanitary Milk Co.*, 177 Kan. 423, 280 P. 2d 605, there is of course no uniformity in our decisions on the proposition of when damages allowed in a personal injury action are excessive for the simple reason determination of the question necessarily depends upon the facts and circumstances of each particular case as it is presented for review. To like effect is *Smith v. Wichita Transportation Corp.*, 179 Kan. 8, 293 P. 2d 242. No verdict is right which more than compensates—and none is right which fails to compensate. (*Union Pac. Ry. Co. v. Milliken*, 8 Kan. 647, 655.) Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. All things considered, we are unable to say from the record before us that this verdict is excessive.

A careful examination of the entire record in this case discloses nothing approaching reversible error, and the judgment is affirmed.